UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEMETRIC THOMPKINS,

        Plaintiff,

v.

UNKNOWN BINNER et al.,

        Defendants.
_____/

Case No. 2:21-cv-138

Honorable Robert J. Jonker

## **OPINION**

        This is a civil rights action originally brought in a single action by 13 state prisoners under 42 U.S.C. § 1983, which the Court severed into 13 separate actions. Plaintiff Thompkins has filed an amended complaint in this new action. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's retaliation and conditions-of-confinement claims against all Defendants. The excessive force claim will proceed.

**Discussion**

I. **Factual allegations**

Plaintiff Demtric Thompkins is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Correctional Officers Unknown Binner, Unknown Lamentola, Unknown Jarvis, and Unknown Miller; Sergeants Unknown Whitlar and Unknown Bemister; and Warden Erica Huss.

Plaintiff Thompkins's amended complaint is similar to but distinguishable from the amended complaints filed by the other twelve original plaintiffs.[1] Plaintiff Thompkins alleges that he had tested positive for COVID-19 on the date of the conduct alleged in his complaint. However, he does not allege that he was suffering any symptoms at that time.

Plaintiff states that, on October 20, 2020, an emergency response team (ERT) was called to Cell Block C, cell First-21 to remove the inmate who had refused to leave. All of the prisoners in C-Block had been diagnosed with COVID-19. Plaintiff resided in cell First-31, ten cells down from the prisoner who refused to leave.

Before the cell extraction began, Plaintiff Thompkins asked the staff involved—Defendants Jarvis, Binner, Lamentola, Miller, Whitlar and Bemister—to not use chemical agents, stating that he had tested positive for COVID-19. At approximately 2:00 a.m., these Defendants, who were masked and equipped with shields, used multiple rounds of tear gas and pepper spray as they forcibly entered the cell. The chemical fumes quickly spread through the unit, which consisted of barred cells and had a central ventilation system.

---

[1] The Court notes that all 13 of the amended complaints appear to have been drafted in substantial measure by one plaintiff, Larry M. Stovall. Many of the allegations are identical in all of the amended complaints. The allegations that differ have to do with whether the individual plaintiff made certain complaints or heard another inmate make those complaints. In the instant case, most of the serious allegations concern the complaints of other inmates.

2

Plaintiff Thompkins quickly began to complain of a lack of air and difficulty breathing, and he requested medical treatment. Defendant Binner stated, "You guys will be alright." (Am. Compl., ECF No. 18, PageID.194.) Plaintiff and other inmates asked Defendants to open the windows, but Binner turned away. Plaintiff alleges that the chemical sprays caused his nose and chest to fill with mucus, and he experienced uncontrollable coughing for an unspecified period. Plaintiff shouted at Defendant Lamentola, "[G]et help, and open a window." (*Id.*, PageID.195.) Lamentola responded, "[Y]ou guys like complaining and writing grievances, well there you go." (*Id.*) Plaintiff asked for help and medical treatment. Defendant Miller advised that they had turned on the shower fan and that the inmates would be okay and should relax. (*Id.*) Plaintiff heard other inmates say that they were asthmatic and ask Defendants to call health care because they were in distress. Defendant Jarvis responded, "You guys should have thought about that before destroying Neebish Unit."[2] (*Id.*) Plaintiff Thompkins asked what that had to do with not providing medical help and not opening the window. Defendant Jarvis responded, "We are busy[]. If you guys are in need of health care, then perhaps you guys shouldn't have destroyed Neebish Unit." (*Id.*, PageID.196)

Plaintiff complains that Defendants refused to open the window, which caused him to continue to suffer from the effects of the chemical sprays. Defendant Miller told Plaintiff, "You guys are okay, just lay down. . . . The more you cry, the worse it will get." (*Id.*) Plaintiff asked to go to health care and again asked Defendants to open the window. Defendant Miller responded, "You guys are okay. . . . Just lay down. . . The more you cry, the worse it will get." (*Id.*)

---

[2] Neebish Unit is one of the housing units at Chippewa Correctional Facility (URF). On September 13, 2020, residents of Neebish Unit engaged in a major disturbance, causing significant damage to the unit. (Compl., ECF No. 1, PageID.9.) Following the incident, many URF prisoners, including the original 13 plaintiffs, were transferred to MBP.

3

Plaintiff asked why Defendants had used chemicals when they could have pulled the inmate out of the cell without it, complaining that Defendants were punishing the inmates. Defendant Lamentola responded, "You guys came as a unit. We will deal with you guys as a unit. . . . You guys should think about that the next time you all destroy a unit." (*Id.*)

Later that morning, Defendant Whitlar conducted rounds, and multiple prisoners complained about the use of chemicals. Whitlar told the prisoners, "You are fine." (*Id.*) Whitlar walked off. Later that morning, during Defendant Bemister's rounds, other prisoners complained about the decision to use tear gas and pepper spray. Plaintiff asked what Bemister intended to do about "the issues from this morning." (*Id.*, PageID.197.) Bemister told prisoners to file grievances. Other prisoners also requested health care. Bemister told them to send a kite to health care.

When Defendant Warden Huss made her rounds four days later, on October 24, 2020, various inmates complained about the use of chemical agents. Huss responded, "You guys are over reacting, and remember you wouldn't be here if you didn't destroy Neebish Unit." (*Id.*, PageID.198.) Inmates repeated their claims that staff had ignored the risk to asthmatic and COVID-positive prisoners, refused to open the windows, and refused medical care. Huss responded, "I'm not concerned with any of that[.] . . . I'm concerned with keeping staff[] and finding staff to work the prison." (*Id.*) Prisoners screamed at Huss and complained about the conduct. Huss responded, "I don't see anything wrong with their conduct[.] But I do take issue with you guys not following the rules." (*Id.*, PageID.199.) Plaintiff told Defendant Huss to look at what happened, and he asked Huss to set orders directing that no chemical agents be released in a unit housing COVID-19-positive prisoners. (*Id.*)

4

Plaintiff generally asserts that he has engaged in protected conduct when making verbal complaints and filing grievances between September 14, when he arrived at MBP, and October 20. He contends that Defendants' conduct was taken in retaliation for the exercise of his First Amendment rights.

Plaintiff also alleges that Defendants were deliberately indifferent to the substantial risk of serious injury to Plaintiff by releasing chemical agents in his unit, when Defendants knew Plaintiff had tested positive for COVID-19. Plaintiff also contends that the use of chemical agents under the circumstances amounted to an excessive use of force against Plaintiff that was designed to inflict pain and cause injury. In addition, Plaintiff claims that Defendants' refusals to open windows after releasing the chemicals and refusal to call health care violated the Eighth Amendment.

Finally, Plaintiff claims that Defendants conspired to punish Plaintiff and other prisoners in violation of the Eighth Amendment and to retaliate against Plaintiff and other prisoners for the exercise of their First Amendment rights. He seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Retaliation

Plaintiff alleges that he made oral complaints and filed grievances and civil actions about unspecified matters between his arrival at the prison on September 14, 2020, and the date of the incident, October 20, 2020. Plaintiff mentions one civil action in which he was involved, *Thompkins v. Horrocks*, No. 2:21-cv-5 (W.D. Mich.). He sweepingly alleges that Defendants' actions were taken in retaliation for his protected First Amendment conduct.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element, the filing of a civil rights action is protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Plaintiff, however, filed his referenced civil rights action on January 11, 2021, and it was dismissed for failure to state a claim on January 29, 2021. Because the action was not filed until after the alleged adverse conduct, it cannot have operated as protected conduct triggering the alleged retaliation.

Plaintiff also alleges that he engaged in protected conduct preceding the adverse action because he submitted unspecified written and oral grievances. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Such nonfrivolous grievances constitute protected conduct, whether they are written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Plaintiff, however, utterly fails to state when he filed his grievances, against whom, and about what. He therefore fails to allege facts indicating that his complaints were nonfrivolous. Instead, he makes only a conclusory claim that he grieved unspecified things over the course of the month preceding the alleged adverse action. Conclusory

7

allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff fails to allege facts suggesting that he was engaged in protected conduct, his retaliation claim fails at the first step.

Moreover, even if the grievances Petitioner mentions were not frivolous, Petitioner fails to allege facts to support an inference that the grievances prompted the adverse action of which he complains. Thus, his allegations also fall short at the third step.

### IV.    Eighth Amendment—Conditions of Confinement

Plaintiff raises a series of Eighth Amendment claims. First, he claims that Defendants violated the Eighth Amendment by releasing chemical agents to extract another prisoner in the unit, arguing that, because Plaintiff had tested positive for COVID-19, the use of chemical agents amounted to deliberate indifference to his serious medical needs.[3] Second, he claims that Defendants released the chemical agents for illegitimate reasons, strictly to punish inmates for engaging in unrest at Neebish Unit. Third, he alleges that Defendants failed to open the windows or call health care after releasing the agent, thereby violating Plaintiff's Eighth Amendment rights.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–

---

[3] Plaintiff appears to allege that Defendants' conduct also violated the Eighth Amendment because multiple prisoners on the unit had significant symptoms of COVID-19 and asthma. Plaintiff, however, lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). The Court therefore considers only the claims specific to Plaintiff.

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A.  Deliberate Indifference—Release of Chemical Agent

Plaintiff contends that Defendants violated the Eighth Amendment by using chemical agents to extract another prisoner in Plaintiff's housing unit, despite knowing that Plaintiff had tested positive for COVID-19. Plaintiff alleges that Defendants' conduct amounted to deliberate indifference to Plaintiff's serious health or safety concerns.

The Sixth Circuit has held that the risk of contracting COVID-19 meets the objective prong of the deliberate-indifference standard, requiring prison officials to take reasonable measures to avoid prisoners' exposure to the illness. *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020). The court, however, has never held that, once a prisoner tests positive for COVID-19, he must be treated as if he is at significant risk of serious harm from any circumstance that could aggravate a respiratory condition, even if he is not experiencing respiratory symptoms. It is commonly recognized that a significant percentage of persons who test positive for COVID-19 remain asymptomatic throughout the course of infection. *See* Centers for Disease Control & Prevention, *Estimated COVID-19 Burden*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (updated Nov. 8, 2021) (estimating ranges of asymptomatic cases for those 0 to 64 years at 5%–24% and for 65 years and older at 5%–32%); *Magnitude of asymptomatic COVID-19 cases throughout the course of infection: A systematic review and meta-analysis*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7987199 (Mar. 2021) (estimating that 25% of

infections remain asymptomatic).[4] In addition, even those individuals who experience respiratory symptoms at some point during the course of the illness may not have such symptoms at any particular time. As a result, as with all Eighth Amendment claims, it is an individual prisoner's circumstances that determine whether he is at substantial risk of serious harm.

Courts routinely have concluded that officers do not typically violate the serious medical needs of one prisoner by using pepper spray to extract an inmate from a nearby cell. *See Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018) (finding that no case supported the conclusion that a prison official violates the rights of an inadvertently and indirectly exposed inmate when the official attempts to secure a different, uncooperative prisoner by the use of tear gas); *Handy v. City of New York*, No. 19-CV-3885, 2021 WL 4482548, at *4 (S.D.N.Y. Aug. 27, 2021) (holding that courts of the district repeatedly had found that "'the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim'") (quoting *Gutierrez v. City of New York*, No. 13-CV-3502, 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21, 2015) (collecting cases); *Allen v. Bosley*, 253 F. App'x 658, 659–60 (9th Cir. 2007) (holding that use of pepper spray on another inmate does not of itself violate the rights of a neighboring inmate); *Lindsey v. Boughton*, No. 17-cv-52, 2018 WL 3824143, at *4 (W.D. Wis. Aug. 10, 2018) (holding that "even direct exposure to pepper spray typically

---

[4] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

results in severe but temporary discomfort that does not pose a long-term health risk") (citing *Boyce v. McKnight*, No. 14-cv-418, 2015 WL 8778330, at *10–11 (N.D. Ill. Dec. 15, 2015)). Indeed, courts have held that, when the only symptoms of exposure to chemical agents is to cause a prisoner to cough, choke, gag, and experience burning to the eyes—"the transitory effects of the pepper spray"—a plaintiff's allegations are insufficient to meet the objective prong of the Eighth Amendment standard. *Allen*, 253 F. App'x at 660; *see also McDougald v. Esham*, No. , 2018 WL 1010214, at *11 (S.D. Ohio Feb. 21, 2018) (absent particular vulnerability to chemical-agent exposure or a serious medical need beyond the normal effects of pepper-spray exposure, indirect exposure to chemical agents does not rise to the level of an Eighth Amendment violation); *McGuire v. Union Cnty. Jail*, No. 4:13-CV-P28, 2013 WL 4520282, at *5–6 (W.D. Ky. Aug. 26, 2013) (plaintiff failed to show how complaints of eye burning and runny nose after being pepper sprayed rose to the level of a "sufficiently serious" medical need); *Censke v. Unknown Ekdahl*, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes and skin . . . do not constitute a serious medical need for purposes of the Eighth Amendment"); *Reeves v. Sweet*, No. 1:04-cv-605, 2005 WL 2417659, at *4 (W.D. Mich. Sept. 30, 2005) ("although [p]laintiff complains that he had breathing difficulties [after secondhand exposure to pepper spray], he has failed to present facts demonstrating that those difficulties were sufficiently different in degree or type from those experienced by others exposed to the spray, and he has asserted no adverse medical consequences from the exposure.").

In the instant case, Plaintiff makes no allegation that he was suffering any respiratory or other symptoms at the time the tear gas and pepper spray were used to extract another inmate. Nor does he allege that he experienced more than the ordinary and transient symptoms of

exposure to chemical agents. As a result, he fails to demonstrate that Defendants were deliberately indifferent to his serious medical needs.

> B. **Deliberate Indifference—Failure to Provide Medical Care or Mitigate Exposure to Chemical Agent**

Plaintiff alleges that Defendants failed to call health care, despite his requests. He also contends that Defendants failed to take adequate measures to reduce his indirect exposure to the chemical agents, such as by opening windows. Plaintiff contends that both failures amounted to deliberate indifference to his serious medical needs.

Plaintiff's allegations concerning Defendants' failures to provide medical care or mitigate the effects of the chemical agents, like his allegations concerning the release of the agents, fail to rise to the level of deliberate indifference, because he fails to allege facts that would support the objective prong of the standard. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (the objective component requires the existence of a "sufficiently serious" medical need) (quoting *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta*, 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). "Routine discomfort" does not rise to the level of a serious need. *Hudson*, 503 U.S. at 9 (citing *Rhodes*, 452 U.S. at 347).

As previously discussed, Plaintiff makes no allegation that he suffered more than the usual, transitory effects of tear gas or pepper spray to which he was exposed only indirectly.

*See Allen*, 253 F. App'x at 660; *McDougald*, 2018 WL 1010214, at *11; *McGuire*, 2013 WL 4520282, at *5-6; *Censke*, 2009 WL 1393320, at *8; *Reeves*, 2005 WL 2417659, at *4. He does not allege that he was actively sick with COVID-19 or that he was otherwise particularly vulnerable to indirect exposure. *McDougald*, 2018 WL 1010214, at *11. He alleges no adverse effects on his health either due to the exposure or due to any delay in the mitigation of the chemical exposure or the provision of health care. *See Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted) (recognizing that, in order to allege an Eighth Amendment claim based on delay of medical treatment, a plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment").

Plaintiff fails to allege facts supporting the objective prong of the deliberate indifference standard. His Eighth Amendment claim therefore will be dismissed.

**V.    Eighth Amendment—Excessive Force**

Plaintiff alleges that Defendants used excessive force when they unnecessarily employed multiple rounds of tear gas and pepper spray to extract another inmate, thereby causing Plaintiff to be indirectly exposed to the chemical irritants. Plaintiff also alleges that Defendants, by refusing to take available actions to dissipate the chemicals, acted to punish Plaintiff, wantonly exercising excessive force.

As discussed, the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes*, 452 U.S. at 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

14

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). A prisoner's claim of excessive force must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley*, 475 U.S. at 321–22.

Plaintiff alleges that Defendants used pepper spray and tear gas when it was unnecessary to extract the prisoner, used an excessive amount of pepper spray, and refused to take simple remedial action, such as to open a window, to dissipate the chemicals. Plaintiff also alleges statements by various Defendants, which suggest that Defendants' actions and inactions were intended to punish all residents of the unit, some of whom had been involved in the destruction of Neebish Unit. The facts alleged by Plaintiff are sufficient to support his excessive-force claim.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's retaliation and condition-of-confinement claims be dismissed with prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Plaintiff's excessive-force claims remain in the case.

An order consistent with this opinion will be entered.

Dated:   November 19, 2021        /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE